NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0881n.06

No. 10-5820

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 22, 2011*

LEONARD GREEN, Clerk

BETTY GEESLIN, As Personal Representative of the
Estate of Bill Geeslin, Deceased,

    Plaintiff-Appellant,

        v.

KOBE BRYANT,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of Tennessee
at Memphis

_____/

**Before:**    **MARTIN, GUY, and GRIFFIN, Circuit Judges.**

    **PER CURIAM.**    This is a diversity case in which the plaintiff, Bill Geeslin, brought Tennessee state law tort claims of assault, battery, and intentional infliction of emotional distress against professional basketball player Kobe Bryant. Finding no evidence of the requisite intent for the assault claim; that Geeslin consented to contact between the parties by virtue of his courtside seat at the game; and that the defendant's conduct did not support a claim for intentional infliction of emotional distress, the district court entered summary judgment for Bryant. We affirm in part and reverse in part.

**I.**

Geeslin and a friend attended a professional basketball game at the FedEx Forum in Memphis, Tennessee on November 14, 2005. The Memphis Grizzlies were playing the Los Angeles Lakers, the team of basketball star Kobe Bryant. Geeslin had received skybox tickets to the game from a casino. Once Geeslin and his friend arrived at the skybox, their host offered them courtside tickets. Geeslin and his friend then moved down to folding chairs on the floor, located just to the side of one of the baskets in the front row.

While Geeslin and his friend were seated in their courtside seats, a Lakers player recovered a ball at the Grizzlies' end of the floor. That player attempted a pass to Bryant. In attempting to get control of the ball, Bryant came into contact with a Grizzlies player and careened out of bounds, into or onto the plaintiff. Geeslin spilled his beer, and was pushed backwards in the folding chair.

Geeslin alleges that Bryant, in getting himself up and back into the game, pushed his forearm into Geeslin's chest in an unnecessary and forceful manner, causing him injury. Geeslin also alleges that Bryant "glared" at him as he moved away and did not apologize. In asserting that Bryant used more force than necessary, Geeslin suggests that Bryant may have been frustrated by the Lakers' losing score and the referee's refusal to call a foul on the player allegedly responsible for Bryant's fall.

After the contact between Geeslin and Bryant, Geeslin and his friend returned to the skybox for a period of time and then went home. Two days later, Geeslin sought medical attention for pain in his chest. He was diagnosed with a bruised lung cavity, and received

ibuprofen, another medicine, and a breathing machine. Geeslin's physical symptoms dissipated after two weeks, but he alleges he also suffered from continued anxiety stemming from the incident, for which he received prescriptions for Xanax and Ambien from his primary care physician.

Geeslin filed suit against Bryant shortly after the game.[1] The Amended Complaint, filed after Geeslin's death, alleges claims of assault, battery, and intentional infliction of emotional distress, asserting that the incident between Geeslin and Bryant "contributed as a proximate cause to [Geeslin's] death on June 17, 2008." The district court granted Bryant's motion for summary judgment, and this appeal followed.

## II.

We review the district court's summary judgment determination *de novo*. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 482 (6th Cir. 2008). Under the Federal Rules of Civil Procedure, the entry of summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no dispute that Tennessee law applies in this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Assault and Battery

The tort of battery requires an intentional act that causes bodily contact that is unpermitted, harmful, or offensive. *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App.

---

[1]Bill Geeslin died in June 2008. His mother and personal representative Betty Geeslin filed a notice of suggestion of death and was substituted for plaintiff in November 2009.

1989). When a plaintiff has given consent for the contact, or a defendant has a just cause or excuse for the contact, there is no battery. *See Kline v. Jordan*, 685 S.W.2d 295, 296 (Tenn. Ct. App. 1984) (consent); *Kite v. Hamblen*, 241 S.W.2d 601, 603 (Tenn. 1951) (excuse). Similarly, assault has recently been described by the Supreme Court of Tennessee as the intentional creation of "an apprehension of harm in the plaintiff." *See Hughes v. Metro. Gov't of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 371 (Tenn. 2011).

There is no dispute about the fact that Bryant's initial contact with Geeslin was involuntary. Geeslin's claim is that as Bryant got up, he, "without provocation, violently struck Mr. Geeslin with [his] elbow, causing the injuries and damages." Geeslin's support for this claim is his deposition testimony that (a) it was "obvious" that Bryant intended to harm him, and (b) as Bryant left the scene of contact, he "kind of pushed his arm towards me and glared at me and walked away." Geeslin has presented no evidence distinguishing injury caused by his initial contact with Bryant from any injury caused by what Geeslin has described as Bryant's "intentional forearm" following the initial collision. However, as outlined above, Geeslin presented his description of the events, including offensive contact by Bryant which he claims caused him injury. Bryant, on the other hand, offered neither deposition testimony nor an affidavit in opposition to the motion.

Although the district court found that Geeslin had "assumed the risk or consented to the entire contact between he and the Defendant," by virtue of taking the courtside seat, we find that analysis applies only to the initial contact between Geeslin and Bryant and not the

secondary, offensive contact described by Geeslin. In viewing the evidence in the light most favorable to Geeslin, as we must, we find that a material question of fact remains on his assault and battery claims. For this reason, the district court's entry of summary judgment for Bryant on these claims was improper.

**B.      Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress or outrageous conduct in Tennessee requires a showing by the plaintiff of (1) intentional or reckless conduct; (2) conduct so outrageous it is not tolerated by civilized society; and (3) a serious mental injury to plaintiff resulting from the conduct. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)); *Johnson v. Woman's Hosp.*, 527 S.W.2d 133, 138-39 (Tenn. Ct. App. 1975)). As the Tennessee Court of Appeals has described it, a successful claim for intentional infliction of emotional distress "is limited to mental injury which is so severe that no reasonable [person] would be expected to endure it." *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) (alteration in original) (internal quotation marks and citation omitted).

While Geeslin generally described symptoms including anxiety and sleeplessness following the incident, we find this is not evidence of a "*severe* mental injury," which is required for this claim to survive summary judgment.[2] *See Miller v. Willbanks*, 8 S.W.3d

---

[2]Although Geeslin asserts he was diagnosed with "anxiety, insomnia, and post-traumatic stress, among other maladies," we note that what Geeslin points to for this "diagnosis" are notes from the emergency room visit he made on November 17, 2005, just three days after the incident.

607, 615 n.4 (Tenn. 1999).  We also note that Geeslin's description of the rough push by Bryant in leaving the scene of the collision does not reach the level of "outrageous" behavior sufficient to support such a claim.  Summary judgment for Bryant was appropriate here.

For these reasons, we **AFFIRM IN PART AND REVERSE IN PART** (reversing only the district court's disposition of Geeslin's assault and battery claims) and remand for further proceedings consistent with this opinion.